IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CRAYTONIA BADGER                                          PLAINTIFF

v.                          Civil No. 1:18-cv-1038

SHERIFF MIKE LOE, Columbia
County, Arkansas; CHIEF DEPUTY
DOUG WOOD; INVESTIGATOR
KELLY BLAIR; and SERGEANT SONJA
COLLIER                                                   DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 24). Plaintiff

Craytonia Badger filed a Response and a Supplemental Response. (ECF Nos. 26, 32). Defendants

have not filed a reply, and their time to do so has passed. *See* Local Rule 7.2(b). The Court finds

the matter ripe for consideration.

## I. BACKGROUND

This is a civil rights action filed by Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff

proceeds *pro se* and *in forma pauperis* ("IFP"). Plaintiff is currently incarcerated in the East

Arkansas Unit of the Arkansas Department of Correction ("ADC").

This case concerns alleged incidents that occurred while Plaintiff was incarcerated in the

Columbia County Detention Center ("CCDC"). Plaintiff has sued Defendants Sheriff Mike Loe,

Investigator Kelly Blair, and Sergeant Sonja Collier in their individual capacities only. (ECF No.

1 at 4-5; ECF No. 10 at 1). Plaintiff has sued Defendant Chief Deputy Doug Wood in both his

individual and official capacities. (ECF No. 1 at 5; ECF No. 10 at 2).

On February 14, 2018, Plaintiff, an ADC inmate, was transported to the CCDC. (ECF No.

26-2 at 1). That same day, Defendant Blair arrested Plaintiff on a warrant for furnishing prohibited

articles; use of a communications device; engaging in a continuous criminal gang, organization or

enterprise; financial identity fraud; and insurance fraud by use of a procurer. (*Id.* at 2-3). Plaintiff was transferred back to the ADC the following day. (*Id.* at 4). On February 22, 2018, Plaintiff was transported back to the CCDC. (ECF No. 26-2 at 5). It appears he was charged with additional crimes at that time. (*Id.*).

Plaintiff has filed several civil rights lawsuits in the Western District of Arkansas against Defendants, the earliest of which are: *Badger v. Loe, et al.*, No. 1:18-cv-1026, filed on April 25, 2018; *Badger v. Loe, et al.*, No. 1:18-cv-1031, filed on June 6, 2018; and *Badger v. Loe, et al*, No. 1:18-cv-1032 filed on June 6, 2018.

While he was incarcerated in the CCDC, Plaintiff contends that, after he engaged in civil rights litigation against Defendants, they retaliated against him in the following ways: depriving him of his personal property, namely, pictures and e-cigarettes; refusing to allow him to buy e-cigarettes; falsifying new charges against him; denying him access to the courts; interfering with his mail; and holding him without probable cause and without bail.[1] These alleged instances occurred sporadically over a period of several months. For ease of reference, the Court will separately group the facts relevant to each alleged constitutional violation.

### A. E-cigarettes

On March 12, 2018, Plaintiff attempted to order e-cigarettes from the commissary. (ECF No. 26-2 at 10). His order was denied with a note stating that he would not be allowed to order e-cigarettes that day because he dissembled the last ones he purchased. The notation also stated that he could purchase e-cigarettes in the future but warned that he would not be allowed to order more if he took any other e-cigarettes apart.

---

[1] The record contains grievances filed by Plaintiff and responses thereto that concern incidents that do not relate to Plaintiff's claims in this case and, thus, are not at issue. (ECF No. 26-3 at 3, 11; ECF No. 31 at 65). The remainder of this memorandum opinion will address only the grievances and responses that pertain to Plaintiff's claims in this case and/or that are relevant to the Court's determination of the instant summary judgment motion.

On March 22, 2018, Plaintiff submitted an inmate grievance complaining that Defendant Collier instructed CCDC officers to require him to turn in any previously purchased e-cigarettes whenever he purchases a new one. (ECF No. 26-3 at 2). Plaintiff stated that he should not be required to turn in e-cigarettes he purchased and requested that three previously returned e-cigarettes be returned to him. (*Id.*). On March 29, 2018, in response, Plaintiff was told that the e-cigarettes he purchased would be given back to him. (*Id.*). The response also indicated that, from then on, inmates would only be allowed to buy one e-cigarette at a time. (*Id.*).

That same day, Plaintiff submitted another grievance in which he states that Defendant Collier was abusing her discretion regarding his e-cigarettes. (ECF No. 26-3 at 1). He asserted that there was no policy requiring inmates to return the e-cigarettes they had purchased. (*Id.*). Plaintiff claimed it was an unconstitutional seizure in violation of his Fourth Amendment rights. (*Id.*). He argued the e-cigarettes became his personal property, which he was deprived of without due process and in violation of the Fourteenth Amendment. (*Id.*). He also argued the e-cigarettes were not contraband because the jail sold them for profit. (*Id.*). On March 29, 2018, Plaintiff received the following response to the grievance: "Give him his E-cigs." (*Id.*). Plaintiff followed up with an electronic grievance on March 23, 2018, and the same response was given. (*Id.*).

On April 23, 2018, Plaintiff submitted a grievance complaining that, on March 20, 2018, Defendant Blair had taken Plaintiff's newly purchased e-cigarette during a cell shakedown. (ECF No. 26-3 at 11-13). This grievance requested a full refund of the $10 that he paid for the e-cigarette. (ECF No. 26-3 at 13).

On April 26, 2018, Plaintiff submitted another grievance asking that the e-cigarette that was taken from him on March 20, 2018 be replaced or its price refunded. (ECF No. 26-3 at 14). Plaintiff asserted that if Defendants looked at their cameras, they would see a Magnolia police

officer with the e-cigarette in his hands, walking down a hallway. (*Id.*). Defendant Wood responded that Plaintiff should get his facts straight because his grievance dated April 23, 2018 complained that Defendant Blair took the e-cigarette. (*Id.*).

On April 30, 2018, Plaintiff submitted another grievance about the e-cigarette that had been taken on March 20, 2018. (ECF No. 26-3 at 15). Plaintiff asserted that the facts stated in his previous grievances were correct because Defendant Blair took the e-cigarette from him and then Plaintiff saw a Magnolia police officer leaving with the e-cigarette. (*Id.*). Further, Plaintiff maintained the e-cigarette was not in his cell when he returned. (*Id.*). Plaintiff asked that his property be replaced immediately. (*Id.*). In response, Defendant Wood said that he had investigated the incident and determined that no one had Plaintiff's e-cigarette. (*Id.*).

On May 17, 2018, Plaintiff submitted a grievance stating that the receipts he gets for the e-cigarettes indicates he was purchasing the e-cigarettes and because the receipts do not indicate he is renting or leasing the e-cigarettes, they are his property and he should not be required to turn them in. (ECF No. 20). Plaintiff contended he was being singled out, discriminated against, and retaliated against based on his civil rights litigation pertaining to his treatment at the CCDC. (*Id.* at 22). He pointed out that Defendant Wood was a defendant to the lawsuit he had already filed and "several to come." (*Id.* at 22). He said he had never received the e-cigarettes Defendant Collier was ordered to return to him and that he had been restricted from purchasing e-cigarettes on May 17, 2019, although other inmates could purchase them. (*Id.* at 21-22). Plaintiff maintained that he should be afforded due process before any privileges are taken away. (*Id.* at 23). Defendant Wood responded: "Commissary is a privilege, not a right, and it is not a violation of your 14th Amendment Right." (*Id.* at 20).

### B. Plaintiff's Mail

On March 23, 2018, Plaintiff submitted a grievance complaining that he had written to Defendant Wood about his mail being held for several days after being delivered to the CCDC. (ECF No. 26-3 at 6). Plaintiff stated he had just received books from his family but did not receive large brown envelopes that his family mailed with the books. (*Id.*). On March 27, 2018, in response, Defendant Wood said he had no knowledge of any large brown envelopes arriving with Plaintiff's books. (*Id.*).

On May 1, 2018, Plaintiff submitted another grievance about his legal mail, complaining that Defendant Blair was withholding and partially opening his legal mail. (ECF No. 26-3 at 18). In response, Defendant Wood said the mail given to Plaintiff that morning "was taken from the mailbox in front of the jail this morning." (*Id.*). Defendant Wood said the mail was then taken to the control room and given to Plaintiff. (*Id.*). Defendant Wood also indicated the mailbox was checked every morning. (*Id.*). Defendant Wood's response did not address whether any legal mail had been partially opened. (*Id.*).

On May 18, 2018, Plaintiff submitted a grievance complaining that Defendant Collier refused to give Plaintiff pictures of his children that arrived in the mail because the pictures were inappropriate. (ECF No. 26-3 at 19). Plaintiff contested this assertion and suggested that Defendant Collier was racist. (*Id.*). In response, Defendant Wood stated, "[y]ou now have your pictures." (*Id.*).

On June 6, 2018, Plaintiff submitted a grievance complaining that Defendant Collier withheld his mail and a $100 money order for sixteen days. (ECF No. 26-3 at 28-29). He said he did not receive the money order until June 6, 2018, even though the money order was dated and postmarked May 18, 2018. (*Id.*). Plaintiff indicated that he informed Defendant Wood about

Defendant Collier holding his mail, but Defendant Wood never investigated. (*Id.*). Plaintiff requested that something be done about it. (*Id.*). Plaintiff said he went without commissary and stamps for a time because Defendant Collier was retaliating against him by withholding his mail. (*Id.*). Defendant Wood responded that Plaintiff's mail was not being held. (*Id.*).

On June 7, 2018, Plaintiff appealed the grievance filed the day before, complaining there was no way Defendant Wood could have concluded that his mail was not being withheld because the evidence clearly showed that his mail was held for sixteen days. (ECF No. 26-3 at 29). The $100 money order was posted to his account on June 6, 2018. (*Id.*). He asked that something be done about Defendant Collier holding his mail. (*Id.*). He also stated that this was not the first time she had withheld his mail. (*Id.*). Defendant Wood responded that he had talked to the Plaintiff and told "him again that no one here is messing with his mail." (*Id.*).

### C. IFP Application Account Certificate Forms and Grievance Responses

On March 27, 2018, Plaintiff submitted a grievance addressing, among other things, the following issues: Defendant Wood denying him access to the courts by refusing to complete the account certificate portion of two of his IFP applications; Plaintiff filing ten paper grievances without receiving a single response; and the CCDC's new electronic grievance system allowing inmates to submit only one grievance at a time until the grievance is responded to, causing him to be unable to exhaust his administrative remedies. (ECF No. 26-3 at 7-10). In response, Defendant Wood stated that the two certificates had been filled out by the business office and returned to Plaintiff on March 28, 2018, and the grievances had been answered. (ECF No. 26-3 at 7-8).

On May 15, 2018, Plaintiff submitted a grievance about three account certificate forms that must be submitted with each IFP application. (ECF No. 26-3 at 16). He stated he submitted the

forms to Mrs. Atkinson[2] for her to complete on May 4 and 9, 2018. (*Id.*). He said two of the forms were returned to him incomplete on May 14, 2018. (*Id.*). Plaintiff claimed that he was being denied access to the courts and could not file a civil rights complaint or writ of habeas corpus. (*Id.*). Plaintiff stated that he understood there were three individuals who worked in the business account office and he felt someone should be able to fulfill his request. (*Id.*). Defendant Wood responded, "She will answer them when she returns to work. She has already filled them out multiple times already." (*Id.*).

### D. Investigation of Contraband Smuggling

On April 6, 2018, Investigator Koby Schmittou[3] began listening to the phone calls Plaintiff made while incarcerated. (ECF No. 26-4 at 31). Investigator Schmittou had previous experience with other cases involving Plaintiff and his use of the City Tele Coin System to commit crimes and to smuggle contraband into the jail.[4] (*Id.* at 1-28).

As explained by Defendant Blair in his 2018 incident report,[5] the "Citi Tele Coin is designed for inmates to use their social security number as their pin number. When inmates make calls or send messages through City Tele Coin, they are advised that the calls and items are being recorded, and that they may also be monitored." (ECF No. 26-4 at 31). Defendant Blair indicated that officers knew from previous experience that Plaintiff did not always use his own pin number.[6]

---

[2] Mrs. Atkinson is not a party to this case.

[3] Investigator Schmittou is not a party to this case.

[4] Specifically, Investigator Schmittou knew of incidents involving Plaintiff, occurring during a prior incarceration at the CCDC, on August 31, 2015, September 4, 2015, and October 26, 2015. (ECF No. 26-4). For the August and September 2015 incidents, Plaintiff was charged with violating Ark. Code Ann. § 5-54-119 by introducing prohibited articles into a correctional facility including weapons, controlled substances and cellular phones. (*Id.* at 19-23).

[5] Defendant Blair asserts that all information in his incident report is truthful. (ECF No. 26-7 at 1). He denies including any false information in the report, planting any evidence, or withholding any information. (*Id.* at 1-2).

[6] Defendant Blair was also involved in the 2015 investigation. (ECF No. 26-4 at 1).

(*Id.*).  Officers also knew that Plaintiff sometimes called a source who connected him with another person by use of three-way call.  (*Id.*).  According to Defendant Blair, Plaintiff conducted business this way and talked to people about sending contraband into the jail.  (*Id.*).

Between April 12, 2018 and April 20, 2018, Defendant Blair made notes that Plaintiff was using the City Tele Coin system to coordinate smuggling with Carneshia Badger, referred to as "Nibbles."  (ECF No. 26-4 at 28-30).  According to Defendant Blair, Plaintiff's plan was set forth in detail and included him sending out a package with precut holes for cell phones and tobacco products, advising Nibbles how to package the contraband, and to put earphones and chargers in the package.  (*Id.*).  On April 12, 2018, officers were given a package that was being mailed out and marked "legal mail."  (*Id.* at 32).  The package had a "stuck-on" label addressed to Darren Hayes, Attorney at Law, in Monroe, Louisiana.  (*Id.*).  Under the first label was a label for Plaintiff's attorney at that time.  (*Id.*).  Once the contraband was placed in the package, the first label was to be taken off, revealing the address for Plaintiff's attorney.  (*Id.*).  The package was then to be marked return to sender, who was designated as Inmate Stephano Carpenter.[7]  (*Id.*).  Plaintiff believed the package would not be checked when it was returned to the jail because it was marked legal mail.  (*Id.*).  According to Defendant Blair's incident report, Inmate Carpenter reported that, under threat from Plaintiff, he signed for the package to be sent out.  (*Id.* at 33).

Before the package was mailed from the CCDC, Investigator Schmittou opened the package and took photos.  (ECF No. 26-4 at 32 & 36-41).  Inside were instructions on "how to put and where to put each item."  (*Id.* at 32 & 36).  The reverse side of the envelope had Plaintiff's name on it from a previous mailing.  (*Id.* at 32).  The package was reassembled and mailed out. (*Id.*).

---

[7] Inmate Carpenter is not a party to this case.

The package was returned to the jail on April 20, 2018. (ECF No. 26-4 at 32). It contained two cell phones, batteries with the connecters taped over, and tobacco rolled up in plastic. (*Id.*). The package matched the instructions given by Plaintiff. (*Id.*). Investigator Schmittou took photos of the items. (*Id.* at 42-50). The package was then sealed back up and delivered to Inmate Carpenter in pod 5. (*Id.* at 32-33). Inmate Carpenter reported that Plaintiff took the package from his hands when it was delivered at his door. (*Id.* at 33).

At approximately noon, Defendant Blair, Captain Todd Dew, Sergeant Dustin, and Corporal Scott searched pod 5.[8] (ECF No. 26-4 at 33). On the top bunk of Plaintiff's cell, they found the cut-out part of the cardboard and torn up parts of the outer package. (*Id.*). Spit cups with tobacco in them were found in another cell. (*Id.*). No phones were located. (*Id.*).

On April 23, 2018, Plaintiff submitted a grievance complaining that on April 20, 2018, several officers, including Defendant Blair, harassed him during a cell shakedown. (ECF No. 26-3 at 11). Plaintiff stated that Defendant Blair accused him of receiving a cellphone through the mail. (*Id.*). Plaintiff asserted that he did not receive any mail that day and had only gotten one piece of mail from the court that entire week, which could be verified by the mail logs. (*Id.*). According to Plaintiff, during the shakedown, Defendant Blair made the statement that "he was going to find one on [Plaintiff] regardless even if he has to plant one." (*Id.*). Because he asked them not to destroy his legal mail, Plaintiff alleged that Defendant Blair aggressively shoved him and placed him in handcuffs so tightly that they were cutting off his blood circulation. (*Id.* at 12). As Plaintiff was being removed from the pod, he maintains that Defendant Blair struck him in the back of the head with a closed fist. (*Id.*). Plaintiff stated that the shakedown lasted over three hours, during which time he was not allowed to use the restroom. (*Id.*). Once he was allowed to

---

[8] Captain Dew, Sergeant Dustin, and Corporal Scott are not parties to this case.

use the restroom, his waste was searched. (*Id.* at 13). Plaintiff also stated that the officers performed a rectal cavity search on him. (*Id.*). Defendant Wood responded to the grievance by saying he had investigated it and "determined that everything you stated is a lie." (ECF No. 26-3 at 11). On May 20, 2018, Plaintiff submitted a grievance stating that he had never received a response to his April 23, 2018 grievance. Plaintiff was told that the response to the April 23, 2018 grievance was that everything he stated was a lie.

On May 21, 2018, Plaintiff submitted a grievance contending that he was being retaliated against for filing lawsuits against Defendants. (ECF No. 26-3 at 24-26). Plaintiff stated that Defendants fabricated a charge for possessing prohibited articles and at his initial appearance on May 17, 2018 for that charge, Judge David Talley would not read him the probable cause affidavit, thereby violating his Sixth Amendment rights. (ECF No. 26-3 at 24-26). Plaintiff asserted that there was, in fact, no probable cause affidavit and that Judge Talley and prosecutor Ryan Phillips conspired with Defendants to retaliate against him by charging him without cause.[9] (*Id.*).

On July 20, 2018, deputies performed a search of the cell occupied by Plaintiff and two other inmates. (ECF No. 26-4 at 53). They found a container with 15 Diclofenac pills and a "blue Vape Pen." The deputies continued searching other cells and found: a functioning smart phone with an extra battery inside a large document envelope; a metal pipe securely wrapped up in a t-shirt; and over one hundred pills of various prescription medications in a plastic container. (*Id.* at 53-55).

### E. Relevant CCDC Policies

Pursuant to CCDC policy, jail detainees can keep certain personal items. (ECF No. 26-1 at 1; ECF No. 26-6 at 1). All other possessions are inventoried and are stored by the CCDC. (ECF

---

[9] On August 30, 2018, the Court dismissed Plaintiff's claims in this case against Judge Talley and Prosecutor Phillips pursuant to the doctrines of judicial and prosecutorial immunity. (ECF No. 12).

No. 26-6 at 1). The CCDC tries to keep contraband out of the facility using searches, inspections, investigations, and prosecution. (ECF No. 26-1 at 2; ECF No. 26-6 at 2). Contraband is defined as any item or article in the possession of a detainee that has not been officially issued, or authorized by law or by the sheriff's rules, regulations, or orders. (*Id.*). Cell phones are considered contraband. (*Id.*).

Authorized items may be considered contraband if they are found in excessive quantities, altered from their original condition, or found in a place in which they are not authorized. (ECF No. 26-1 at 2; ECF No. 26-6 at 2). Additionally, items belonging to a detainee and found in the possession of another detainee may be considered contraband. (*Id.*). It is CCDC's policy to refer all violations of state or federal law to the prosecutor's office. (*Id.*).

Additionally, it is CCDC's policy that inmates shall have reasonable access to the courts through counsel whether appointed or retained. (ECF No. 26-1 at 3). If counsel has not been appointed or retained, the inmate should receive reasonable access to law library materials. (*Id.*).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient

evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III. DISCUSSION

Defendants contend they are entitled to summary judgment for the following reasons: (1) there is no proof of any personal involvement by Defendant Loe; (2) Defendants did not retaliate against Plaintiff for exercising his constitutional rights by depriving him of his personal property; (3) Plaintiff was not retaliated against or conspired against by the filing of new charges; (4) Plaintiff was not denied access to the courts; (5) Defendants are entitled to qualified immunity; and (6) there is no basis for official capacity liability.

"The essential elements of a § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Vista*, 557 F.3d 564, 571 (8th Cir. 2009) (citation omitted). Liability under section 1983 requires some personal or direct involvement in the alleged unconstitutional action. *See, e.g.*, *Ripon v. Ales*, 21 F.3d 805, 808-09 (8th Cir. 1994).

First, the Court will address Defendants' argument that summary judgment is proper as to Defendant Loe. Then the Court will address Defendants' arguments that summary judgment is proper on Plaintiffs' claims that Defendants retaliated against him. Next, the Court will address Plaintiff's official capacity claims. If necessary, the Court will take up the issue of qualified immunity.

### A. Personal Involvement of Defendant Loe

Defendants contend that Defendant Loe is entitled to summary judgment on all claims against him because Plaintiff has failed to establish that he had any personal involvement in any of the alleged constitutional deprivations. Plaintiff asserts that Defendant Loe was part of a

conspiracy to retaliate against him by fabricating charges and that, as the sheriff, Defendant Loe authorized the retaliatory actions.

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability.") (internal quotations omitted). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendant, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)).

Plaintiff has not shown that Defendant Loe was personally involved in any of the alleged unconstitutional conduct. Plaintiff does not show that he directly communicated with Defendant Loe; there is no evidence that Defendant Loe was present when any of the alleged unconstitutional actions took place; and there is no evidence that Defendant Loe was involved with any decision to place limits on commissary purchases of e-cigarettes, that he was involved in the April 20, 2018 search, or that he was aware of any problems Plaintiff had with his mail or with getting his account certificates completed.

Plaintiff offers only a bare allegation that Defendant Loe conspired with the other Defendants, the judge, and the prosecutor to have false charges filed against him in 2018. Plaintiff has not supported this conclusory allegation with any evidentiary support. There is nothing in the record to support a conclusion that there was a meeting of the minds or an understanding among Defendant Loe and others to achieve the aim of filing false criminal charges against Plaintiff.

*Putman v. Gerloff*, 701 F.2d 63, 65 (8th Cir. 1983). Thus, Plaintiff has failed to demonstrate a causal link between Defendant Loe and any deprivation of Plaintiff's constitutional rights.

Accordingly, the Court finds that Defendant Loe is entitled to summary judgment on any individual capacity claims asserted against him in this case.

## B. Retaliation

Plaintiff alleges that Defendants retaliated against him in various ways for filing civil rights lawsuits against them and for filing grievances.

"To prevail on his retaliation claim, [Plaintiff] must show: (1) that he engaged in protected activity; (2) that the defendant[s] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by [Plaintiff's] exercise of his constitutional rights." *Eggenberger v. W. Albany Twp.*, 820 F.3d 938, 943 (8th Cir. 2016) (citation omitted). There is no question that Plaintiff engaged in protected First Amendment activity. *See Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). Thus, the Court will consider only the remaining elements. The test is an objective one: "the question is not whether the plaintiff himself was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done." *Eggenberger*, 820 F.3d at 943.

Generally, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)). The retaliatory conduct itself need not be a constitutional violation to be actionable. Additionally, there is no independent injury requirement when retaliatory conduct is involved. *See Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994).

Plaintiff has alleged several retaliatory actions. Specifically, he contends that Defendants retaliated against him in the following ways: depriving him of his personal property, namely, pictures and e-cigarettes; refusing to allow him to buy e-cigarettes; falsifying new charges against

him; denying him access to the courts; interfering with his mail; and holding him without probable cause and without bail.  The Court will address each in turn.

### 1. Deprivation of Property:  Pictures

On May 18, 2018, Plaintiff submitted a grievance stating that Defendant Collier was withholding pictures of his children that were mailed to him.  (ECF No. 26-3 at 19).  He grieved further that Defendant Collier did so because she was racist and because she could get away with it.  (*Id.*).  Defendant Wood responded to the grievance just a few hours later, saying that Plaintiff had been provided with his pictures.

Plaintiff's claim is that Defendant Collier withheld his pictures because she is racist; not because she was retaliating against him for exercising a protected constitutional right.  Thus, Plaintiff has not stated a claim of retaliation regarding pictures.  Even if he had, Plaintiff failed to demonstrate that Defendant Collier's alleged action was motivated by his filing lawsuits or that it would have chilled a person of ordinary firmness from engaging in the protected First Amendment activity.  Thus, the Court finds that summary judgment is proper as to this claim.

To the extent Plaintiff is also attempting to assert a claim based on an alleged deprivation of property without due process, the claim fails as a matter of law.  This was a random act for which the county was not in a position to provide a pre-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 534 (1984).  Due process is satisfied by an adequate post-deprivation remedy.  *Id.* The evidence shows that Plaintiff quite clearly had an adequate post-deprivation remedy.  He submitted a grievance about the issue and, a few hours later, had his pictures.

Accordingly, the Court finds that Defendants are entitled to summary judgment on this claim.

### 2. Deprivation of Property:  E-cigarettes

Plaintiff maintains he was deprived of his property without due process:  (1) by Defendant Collier on March 22, 2019, when he was required to turn in three partially used e-cigarettes he had

purchased at the commissary the day before in order to purchase a new one; (2) when inmates were limited to purchasing one e-cigarette at a time; (3) when an e-cigarette was taken during the April 20, 2018, search; and (4) when he was restricted from purchasing an e-cigarette on May 17, 2018.

Defendants argue that commissary is a privilege not a right. This is correct. *See, e.g.*, *Roberts v. Nixon*, No. 1:14-cv-0035, 2014 WL 1648840, at *2 (E.D. Mo. Apr. 24, 2014) (stating a prisoner has no constitutionally protected interest in commissary privileges); *Thompson v. Stovall*, No. 4:10-cv-4113, 2011 WL 2936217, at *1 (W.D. Ark. July 21, 2011) (finding that no constitutional right was implicated by the cost of commissary items or the denial of commissary purchases). However, the mere fact that there is no constitutional right to a commissary does not necessarily preclude a finding that an action taken in connection with the commissary was in retaliation for the exercise of a constitutional right. In other words, Defendants may be held liable for actions concerning commissary privileges if the actions are motivated, at least in part, by Plaintiff's exercise of his constitutional rights.

It is not clear how, or why, Plaintiff believes the actions identified above were in retaliation for his engaging in a protected activity. Most of the e-cigarette incidents outlined above occurred in March and April 2018, and Plaintiff did not file his various lawsuits until late April, May, and June 2018. (ECF No. 26-3 at 1-2). The action taken on May 17, 2018 only resulted in Plaintiff going without his e-cigarette for a single day. Moreover, the acts clearly did not chill Plaintiff from filing grievances and lawsuits. Plaintiff presents his retaliation claim without any corresponding factual support. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) (stating that a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do"). In short, there is nothing to suggest Defendants' activities would have chilled a person of ordinary firmness from engaging in the protected First Amendment activity.

To the extent that Plaintiff is also attempting to assert a claim based on an alleged deprivation of property without due process, the claim fails as a matter of law. As noted above in some detail in the background section, the incidents related to e-cigarettes were random acts, each of which occurred on a single occasion, and the county was not able to provide a pre-deprivation remedy. *Hudson*, 468 U.S. at 534. However, a post-deprivation remedy existed: Plaintiff utilized the grievance system. Although the e-cigarette incidents were not resolved in the way Plaintiff would have desired, his grievances were addressed. Plaintiff also remained free to pursue state law remedies such as conversion. *Id.* Plaintiff had adequate post-deprivation remedies and, thus, due process was satisfied. *Id.* With respect to the new CCDC rule allowing inmates to purchase only one e-cigarette at a time, nothing suggests this rule was not applied universally for all inmates.

Plaintiff also maintains that once he purchased the e-cigarettes, they became his property and were not subject to seizure. He is wrong. The applicable CCDC policy clearly provides that any item—even if otherwise authorized—that is altered from its original state is considered contraband and is subject to seizure. This applies even if the item was purchased by an inmate at the commissary. Any other conclusion would lead to absurd results.

Accordingly, the Court finds that Defendants are entitled to summary judgment on this claim.

### 3. Falsifying New Charges

On February 14, 2018, the day Plaintiff arrived at the CCDC, he was arrested on a warrant arising out of activities in 2015 for furnishing prohibited articles, among other things. Relevant to this case is the fact that the 2015 charge of furnishing prohibited articles arose from Plaintiff using the phone system and mail to introduce prohibited items into the jail. Investigator Schmittou and Defendant Blair were both involved in that investigation.

As set forth above, on April 6, 2018, CCDC staff began investigating Plaintiff's activities in 2018. Criminal charges were subsequently brought against Plaintiff as a result. (ECF No. 26-

3 at 24-26). The summary judgment record contains no evidence regarding the status or disposition of these charges.

Plaintiff maintains that the investigation performed by Investigator Schmittou and Defendant Blair into Plaintiff's alleged activities—introducing two cell phones and tobacco into the facility—was completely falsified. Plaintiff contends that: none of the phone calls arranging for contraband to be sent to the jail were made with his pin number; Defendant Blair is not trained in voice analysis; the mail logs show Plaintiff neither sent out nor received any mail on the relevant dates; the photo of the alleged prohibited articles only shows one cell phone, not two as reported; Inmate Carpenter was not housed in the same cell as Plaintiff; the cell phone depicted in the photographs was found in Inmate Carpenter's cell on July 20, 2018; and Defendant Blair told the prosecuting attorney that Plaintiff had filed a lawsuit against him and others in the sheriff's department. (ECF No. 28).

However, the investigation, including the search for contraband allegedly mailed to the jail, occurred prior to the Plaintiff filing any of the lawsuits against officials of the CCDC. The lawsuits were filed in late April, May, and June 2018. The timing belies the existence of any link between the new charges and the lawsuits Plaintiff filed. *See, e.g.*, *Jacks*, 486 F.3d at 1028 (stating the "lack of a temporal connection between the protected activity and the alleged retaliation dispels any inference of a causal connection"). Clearly, absent precognition on the part of the Defendants, the investigation, search, and the decision to file new criminal charges could not have been motivated by Plaintiff's exercise of his protected right to seek redress for constitutional violations by filing civil rights lawsuits.

Accordingly, the Court finds that Defendants are entitled to summary judgment on this claim.

### 4. Denial of Access to the Courts

According to Plaintiff, he was denied access to the courts in the following instances: (1) when Defendant Wood refused to complete the account certificate portion of two of his IFP applications in a timely manner (ECF No. 26-3 at 7-8); (2) when Mrs. Atkinson failed to timely complete the account certificate portions of his IFP applications;[10] and (3) when a new electronic grievance system was adopted which allowed inmates to only submit one grievance at a time until the previous grievance was responded to, causing him to be unable to exhaust his administrative remedies. (*Id.* at 16).

A portion of the identified actions took place prior to Plaintiff filing any of the lawsuits against CCDC officials. Plaintiff appears to be under the incorrect impression that every action that does not meet his expectations, is not done on his timetable, or that he believes is contrary to his interests, is a retaliatory act. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (finding that allegations of retaliation were speculative and conclusory where the plaintiff did not allege that defendants were involved in or affected by his previous litigation). A retaliatory action is one taken in response to Plaintiff's exercise of a constitutionally protected act. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) ("[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in protected speech."). Plaintiff must show that "but for a retaliatory motive the prison official would not have" performed the challenged act. *Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009); *see also Jacks*, 486 F.3d at 1028 (stating a retaliation claim must be based upon an allegation that the prisoner was punished for engaging in constitutionally protected activity).

"It would trivialize the First Amendment to hold that harassment for exercising the right of free speech is always actionable no matter how unlikely to deter a person of ordinary firmness

---

[10] It is unclear from the summary judgment record when Plaintiff received the completed forms. On May 15, 2018, Defendant Wood responded that Mrs. Atkinson would complete the forms when she returned to work. (ECF No. 26-3 at 16). Plaintiff submitted no further grievances on this issue.

from that exercise." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). "The ordinary firmness test is . . . designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013) (citations omitted). In this case, not only was Plaintiff not chilled from engaging in protected activity, as evidenced by the fact that he continued to file suits, but he has failed to show that a person of ordinary firmness would be chilled from engaging in protected activity as a result of these actions.

Moreover, Plaintiff failed to show that the actions violated his right of access to the courts. The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Prison officials must provide inmates with "meaningful access to the courts." *Id*. at 824. However, an inmate has no standing to pursue an access claim unless he can demonstrate he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis v. Casey*, 518 U.S. 343, 351-52 (1996); *see also Klinger v. Dep't of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997) (stating that, to prevail on access-to-courts claim, an inmate must show actual injury or prejudice even if denial of access is complete and systematic). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish that the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

Plaintiff has not alleged the existence of any prejudice or actual injury and, in fact, has filed three lawsuits with this Court while detained at the CCDC. None of these lawsuits have been dismissed because of delays in the provision of IFP documents or because Plaintiff failed to

exhaust his administrative remedies prior to filing suit. Thus, the Court finds that Plaintiff cannot prevail on his access to the courts claim.

Accordingly, the Court finds that Defendants are entitled to summary judgment on this claim.

### 5. Interference with Mail

Plaintiff contends that Defendants interfered with his mail in the following ways: (1) his mail was being held two or three days after it arrived at the facility (ECF No. 26-3 at 6); (2) he did not receive legal mail dated Thursday, April 26, 2018, and Friday, April 27, 2018, until Tuesday, May 1, 2018,[11] and several pieces were partially open when received; and (3) Defendant Collier held a $100 money order dated May 18, 2018, until June 6, 2018. (*Id.* at 28-29).

With respect to the alleged holding of his mail for two to three days after it arrived at the facility, Plaintiff appears to be relying solely on the date the mail was postmarked and not the day the mail arrived at the facility. In short, there is nothing, other than the postmark, to suggest that Plaintiff's mail was held at all. The alleged delay could just as easily be explained by the vagaries of the postal service. Other than the allegation in his grievance that several pieces of his legal mail were partially opened, Plaintiff does not indicate whether the legal mail appeared to have been torn open and read or if the envelopes were simply not completely sealed by the sender. Certainly, there is nothing to suggest that Plaintiff, or a person of ordinary firmness, would have been chilled from submitting grievances or taking legal action against the facility. Furthermore, once again as to a portion of the identified actions, there is no temporal connection; the actions Plaintiff refers to occurred prior to the alleged protected activity—the filing of civil rights lawsuits.

Inmates have a First Amendment right of free speech to send and receive mail. *Hudson v. Palmer*, 468 U.S. 517, 547 (1984). "The fact of confinement and the needs of the penal institution

---

[11] Plaintiff believes he should have received the mail the following workday—i.e. Friday and Monday, rather than receiving both on Tuesday.

impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 125 (1977). "Prisoners' First Amendment rights encompass the right to be free from certain interference with mail correspondence." *Davis v. Norris*, 249 F.3d 800, 801 (8th Cir. 2001). "Interference with legal mail implicates a prison inmate's right to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

"A prison policy that obstructs privileged inmate mail can violate inmates' right of access to the courts." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998). Restrictions on this First Amendment right are valid only if they are: (1) reasonably related to legitimate penological interests such as security, order, or rehabilitation and (2) are no greater than necessary to the protection of the governmental interest involved. *Turner v. Safely*, 482 U.S. 78, 89 (1987). In balancing the competing interests, courts afford greater protection to legal mail than non-legal mail and greater protection to outgoing mail than to incoming mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989).

Plaintiff could send and receive personal and legal mail while he was at the CCDC, as evidenced by the mail log. (ECF No. 32). As mentioned above, he contends there were times when his legal mail was held, when mail was delivered to him partially opened, and that, on one occasion, he did not receive a money order dated May 12, 2018 until June 6, 2018. Plaintiff's claim fails because he has not shown that his legal position was prejudiced by the alleged interference with his mail. *See, e.g.*, *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (finding that a claim fails without evidence of improper motive or resulting interference with inmate's right to counsel or access to courts); *see also Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993) (stating that an inmate shows actual injury by establishing his position as a litigant was prejudiced due to the disputed acts).

Accordingly, the Court finds that Defendants are entitled to summary judgment on this claim.

### 6. Holding Plaintiff without Probable Cause or Bail

Plaintiff maintains that when he appeared before a judge on May 17, 2018 for his initial appearance on the 2018 charges of introducing prohibited articles into the jail, the judge refused to read him the probable cause affidavit that led to the judge issuing a warrant for his arrest. (ECF No. 26-3 at 24-26). According to Plaintiff, the judge instead insisted that the matter be taken up at Plaintiff's next court appearance on May 30, 2018. In Plaintiff's view, the judge's actions establish that he was engaging in corruption with the sheriff's department by merely rubber stamping their warrant requests.

There is simply no nexus between these actions and Plaintiff's allegedly protected activity. The criminal charges were based on conduct occurring in April 2018. No lawsuit involving any of the named Defendants was filed until May 1, 2018.

Moreover, Plaintiff's first appearance adhered to the requirements set forth in Arkansas Rules of Criminal Procedure 8.1 and 8.3. Rule 8.1 requires a detainee, who has not been released on citation or other lawful manner, be taken "before a judicial officer without unnecessary delay." Ark. R. Crim. P. 8.1. Rule 8.3 requires that the detainee be informed of the charges against him; that he is not required to say anything and that anything he says can be used against him; that he has the right to counsel; and that he has a right to communicate with his counsel, family, or friends, and that reasonable means will be provided for him to do so. Ark. R. Crim. P. 8.3(a). Further, Rule 8.3 provides that after the arrested person has an opportunity to confer with counsel, the judicial officer may proceed with the pretrial release inquiry. *Id.* at 8.3(b). There is no requirement that the judge at an initial appearance must read the detainee the probable cause affidavit that lead to the arrest warrant. Nor is there any requirement that the issue of bail must be addressed before a detainee has had an opportunity to confer with counsel.

Accordingly, the Court finds that Defendants are entitled to summary judgment on this claim.

### C. Official Capacity Claims

Plaintiff also proceeds against Defendant Wood in his official capacity. Under section 1983, a defendant may be sued in either his individual capacity, his official capacity, or both. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Plaintiff's official capacity claims against Defendant Wood are treated as claims against Columbia County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). A plaintiff "seeking to impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that caused the plaintiff's injury." *Board of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).

Plaintiff has not demonstrated the existence of any policy or custom that was the cause of the alleged constitutional violations. There is nothing in the summary judgment record suggesting any of the alleged constitutional violations were attributable to a policy or custom of Columbia County. Without any such evidence, Columbia County may not be held liable. *Monell*, 436 U.S. at 692-94; *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

Accordingly, the Court finds that Defendants are entitled to summary judgment on all official capacity claims in this case.

**D. Qualified Immunity**

If a constitutional violation cannot be established, it is unnecessary to conduct a qualified immunity analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As stated above, the Court finds that Plaintiff's claims fail on the merits. Having found no constitutional violations, the Court need not reach Defendants' alternative argument regarding qualified immunity.

## IV. CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment (ECF No. 24) is hereby **GRANTED**. This case is hereby **DISMISSED WITH PREJUDICE**. A judgment of even date shall issue.

**IT IS SO ORDERED**, this 31st day of July, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge